UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No. 3:24-cv-000636

MARY ROBIN AND RUSSELL
FINCHAM III, Co-Administrators of the
Estate of Russell Meade Fincham IV,

       Plaintiff,

v.

GARRY MCFADDEN, in his official
capacity as Sheriff of Mecklenburg County
and individually; MECKLENBURG
COUNTY; PLATTE RIVER INSURANCE,
as surety for the Sheriff; CORTINA KING,
in her official and individual capacity,
COBIYAN FETHERSON, in his official
and individual capacity, Defendant
CHINAETTA FLEMING, in her official
and individual capacity; WELLPATH, LLC;
CASEY JANE ENGLERT, R.N.;
SAMANTHA ELLIOTT-MCLAREN, R.N.,
TRACELLAR SMITH, R.N., INDREA
WARREN, R.N., DANIEL T. BIONDI,
M.D., LOUIS ELAM HALLMAN and
H.I.G. CAPITAL, LLC,

       Defendants.
       _____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO THE MOTION TO DISMISS
FILED BY DEFENDANT CASEY JANE ENGLERT, R.N.'S**

1

Plaintiff MARY ROBIN AND RUSSELL FINCHAM III, (hereinafter, "Fincham" or "Plaintiffs") by and through their undersigned attorneys of record, hereby responds to the motion to dismiss filed by Defendant CASEY JANE ENGLERT, R.N.'S (hereinafter "Englert"), found at Doc. 68 and accompanying memorandum found at Doc. 69.

## PROCEDURAL BACKGROUND

On November 8, 2024, Defendant Englert answered Plaintiff's First Amended Complaint and an accompanying Motion to Dismiss and Memorandum of Law pursuant to Rule 12(b)(6). Defendant Englert moves to dismiss Plaintiffs' claim for treble damages under N.C. Gen. Stat. §162-55, their claim for violations of 42 U.S.C. §1983, and for punitive damages.

## FACTUAL BACKGROUND

On July 6, 2022, Russell Fincham IV, a 25-year-old pre-trial inmate at the Mecklenburg County Detention Center, died of fentanyl toxicity while under the care of Sheriff Garry McFadden and MCDC detention officers. Doc. 34. On July 3, 2022, Mr. Fincham began the process of being booked into the MCDC, after he was arrested for the following charges: (1) Breaking and Entering a Motor Vehicle, (2) Misdemeanor Larceny, (3) Misdemeanor Larceny, and (4) Breaking and Entering a Motor Vehicle. *Id*. at 205. At approximately 11:00 A.M. on July 3, 2022, Mr. Fincham was screened by agents and/or employees of Wellpath, LLC, to assess his physical and mental condition and obtain information about his behavior prior to incarceration. *Id*. at 206. Mr. Fincham informed Elliott-McLaren, R.N. (Wellpath employee), that he was a daily user of fentanyl and had consumed five Xanax bars and one-half gram of fentanyl on July 3, 2022, prior to

incarceration. *Id.* at 207. Mr. Fincham reported regular use of opioids and was considered at risk for opioid withdrawal. *Id*. at 208.

All defendants, including Defendant Englert, were objectively aware of Mr. Fincham's fragile condition because he informed them of his recent ingestion of fentanyl, a deadly narcotic. *Id*. at 210. Defendant Englert was aware that screening Mr. Fincham was essential to understanding and addressing his acute and complex substance withdrawal needs. *Id*. at 211. Mr. Fincham was identified as needing immediate clinical assessment due to his recent, regular, and heavy opioid use. *Id*. at 212. He reported opioid use in the weeks before his arrest and had a history of complicated withdrawals. *Id*. at 212. Mr. Fincham screened positive for substance withdrawal risk. *Id.* at 215.

From approximately 11:00 A.M. on July 3, 2022, through 8:25 A.M. on July 6, 2022, it was evident to Fetherson, King, Fleming, Wellpath, Englert, Smith, and Warren that Mr. Fincham was undergoing a severe reaction to fentanyl toxicity, as well as opioid withdrawals. They all knew that Mr. Fincham had told Elliott-McLaren that he had taken a lethal amount of Fentanyl on July 3, 2022, prior to his incarceration. They were also aware that he was housed in the observation pod and prescribed medication in order to detox from prior drug use. *Id*. at 295.

On July 3, 2022, at approximately 11:00 A.M., all Defendants had direct knowledge that Mr. Fincham had ingested a lethal amount of fentanyl. *Id*. at 220. From the time Mr. Fincham was booked until his death on July 6, 2022, at approximately 8:59 A.M., he was visibly distressed, showing signs of agitation, restlessness, irritability, and constant movement indicating pain. *Id*. at 291, 283, 221. Other residents in Mr. Fincham's pod

3

informed Englert that they had been trying to get Mr. Fincham to drink water throughout the night. *Id*. at 261. Mr. Fincham exhibited an inability to effectively control his body. *Id*. at 262. Particularly, Mr. Fincham experienced wrist drop in front of Englert and Fetherson. *Id*. at 263. At 8:01 A.M., Mr. Fincham lost control of his motor functions, and his breathing became more laborious in front of Englert and Fetherson. *Id*. at 263. Englert then placed the cuff of a blood pressure meter on Fincham's left arm and attempted to obtain his blood pressure. Mr. Fincham appeared lifeless and in physical distress as Englert attempted to obtain a blood pressure reading. *Id*. at 264.

Englert was unable to obtain a blood pressure reading because it was "dangerously low," as she later admitted to SBI investigators. *Id*. at 265. She took Mr. Fincham's manual pulse, which was in the "130s to 140s" range, and observed that he was taking "22 breaths per minute." *Id*. Mr. Fincham simultaneously experienced a wrist drop in front of Fetherson and Englert. *Id* at 266. Englert then attempted to pry Mr. Fincham's hand back to counter the effects of his wrist seizing up. *Id*.

Englert later told SBI investigators that Mr. Fincham's fingers and toes were curled up. *Id*. at 267. According to Englert, this is a symptom of severe dehydration and electrolyte depletion. *Id*. Englert's attempt to pry back Mr. Fincham's hand evidenced her awareness of the physical manifestations of Mr. Fincham's fentanyl toxicity and opioid withdrawals. *Id*. at 268. Englert exited the pod at 8:04:38 AM and told Defendant Smith, the Director of Nursing, that Mr. Fincham exhibited signs of decompensating with low blood pressure and extreme lethargy. *Id*. at 269. Englert left and purportedly sought to call emergency medical services (EMS). *Id*. at 270. However, Defendant Smith told Englert that she could not call

4

EMS without permission from a medical provider, such as a doctor or nurse practitioner. *Id*. Englert then called Physician Assistant D. Walters twice, but Walters did not answer. *Id*. at 271. Thereafter, Englert called Nurse Practitioner Nunnally, who had worked the previous night, and described Mr. Fincham's status. NP Nunnally advised Englert to call 911.

However, rather than calling 911 immediately, Englert contacted a sergeant with MCSO, as she had been instructed that a representative of MCSO needed to make the call to EMS. Englert relayed the situation to the sergeant and asked him to call 911 before ending the call. *Id*. at 272. A few minutes later, the same sergeant called her back and informed her that she had to call 911 herself. Precious minutes passed during the back-and-forth between Englert and the sergeant over who was responsible for calling 911. *Id*. at 273.

Defendant Englert was acting within the scope of her employment with Wellpath LLC. Englert was a licensed registered nurse employed by Wellpath to provide nursing services at MCDC. *Id.* at 140.  Englert was acting under color of state law for purposes of 42 U.S.C. § 1983 while providing medical services at the Mecklenburg County Detention Facility. *Id*. at 33.  Englert 's actions and omissions violated Mr. Fincham's Fourteenth Amendment right to reasonably adequate medical care while in pre-trial custody. *Id*. at 141. Englert is sued individually under § 1983. *Id*. Englert 's actions and omissions were so outrageous as to shock the conscience of the community and violate Mr. Fincham's right to substantive due process. *Id*. at 142.

Englert, who was present with or near Mr. Fincham at the time of his death, did not call for emergency medical services or requested authorization to immediately transfer Mr. Fincham. *Id*. at 294. From approximately 11:00 A.M. on July 3, 2022, through 8:25 A.M. on

5

July 6, 2022, it was evident to Englert that Mr. Fincham was undergoing a severe reaction to fentanyl toxicity and opioid withdrawals. *Id*. at 295. Englert knew that Mr. Fincham had ingested a lethal amount of fentanyl prior to his incarceration on July 3, 2022, and was suffering from opioid withdrawals. *Id*. at 289. She also knew he was housed in the observation pod and prescribed medication to detox from prior drug use. *Id*. Rather than transporting Mr. Fincham to the hospital or calling for emergency medical services, Defendant Englert took no action. *Id*. at 296.

Englert violated the Fourteenth Amendment standard of deliberate indifference by failing to provide appropriate medical treatment and failing to contact emergency medical services after Mr. Fincham reported consuming one-half gram of fentanyl and showed signs of severe opioid toxicity and withdrawals. *Id*. at 364. Mr. Fincham was detained under conditions that posed a substantial risk of serious harm. Id. at 365. Defendant Englert knew of and disregarded those risks to Mr. Fincham's health and safety, including hearing, seeing, and ignoring his condition of fentanyl toxicity and opioid withdrawals, which violated Mr. Fincham's Fourteenth Amendment rights. *Id*.

Englert demonstrated reckless disregard and open contempt for Mr. Fincham's well-being, meeting the deliberate indifference standard. *Id*. at 366. Englert had actual knowledge of Mr. Fincham's serious medical condition but was deliberately indifferent to his need for critical and essential assessment and medical treatment. *Id*. at 367. As a result, Mr. Fincham suffered an agonizing death under inhumane conditions. *Id*. at 370.

## STANDARD OF REVIEW

When reviewing a motion to dismiss, courts must accept well-pled allegations as true, drawing all reasonable inferences in the plaintiff's favor. *GE Investment Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001); *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). The Federal Rules of Civil Procedure require only that a complaint contains "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Plaintiffs need only plead facts sufficient to state a claim for relief that is "plausible on its face" to avoid dismissal on a Rule 12(b)(6) motion. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

Complaints must "give the defendant fair notice of what the claim is and the grounds upon which it rests," and allege facts that show that its claim is plausible, not merely speculative. *Twombly*, 550 U.S. at 555. Complaints need not contain facts matching all prima facie case elements. See *Rouse v. Berry*, 680 F. Supp. 2d 233, 236 (D.D.C. 2010). A Rule 12(b)(6) motion to dismiss tests only "the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

At this stage, the Court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in plaintiff's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). To survive, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the

misconduct alleged." *Id*. When the factual allegations are viewed under the appropriate standard, Defendant Englert's Motion to Dismiss should be denied.

Given the lenient pleading standards of Iqbal and Twombly, Plaintiffs ask the Court to deny Defendant's motions to dismiss at this time and hold them under consideration pending further development of the record and summary judgment motions.

## ARGUMENT

I. **PLAINTIFF ADEQUATELY PLEADS THAT DEFENDANT ENGLERT VIOLATED FINCHAM'S FOURTEENTH AMENDMENT RIGHTS AS A PRETRIAL DETAINEE.**

The Supreme Court in *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466 (2015), confirmed that under the Fourteenth Amendment's Due Process Clause is the appropriate standard for a pretrial detainee's claim. The Fourth Circuit's decision in *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023), confirms the *Kingsley* objective standard and states that to succeed on a Fourteenth Amendment deliberate indifference claim, "it is sufficient that the plaintiff show that the defendant's action or inaction was 'objectively unreasonable[.]'" *Id.* (quoting *Kingsley*, 576 U.S. at 397, 135 S. Ct. at 2473).

The Fourth Circuit has long addressed pretrial detainee claims under the Fourteenth Amendment with the guiding principle that the protections for pretrial detainees are "***at least*** as great as the Eighth Amendment protections available to a convicted prisoner." *Short v. Hartman*, 87 F.4th 593, 607 (4th Cir. 2023) (emphasis added). The Fourth Circuit "recognize[s] that Kingsley's objective test extends to all pretrial detainee claims under the Fourteenth Amendment claims for deliberate indifference to an excessive risk of harm.*"*

8

*Short* at 610. *Kingsley* clearly articulates the applicable law at the time of Fincham's death and must be applied to the Fourteenth Amendment claim against Defendant Englert.

To state a claim for deliberate indifference to a serious medical need, a pretrial detainee must show that he had a serious medical need and that defendant acted with deliberate indifference to that need. *Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 210 (4th Cir. 2017). Prior to *Kingsley*, the Fourth Circuit also required a showing that a defendant knew, or reasonably should have known, of that risk, but this subjective element is no longer applicable in Fourteenth Amendment analysis. *Short*, supra.

Even if the subjective element were to apply, Plaintiff states a viable deliberate indifference claim. Plaintiff alleges that Fincham had a serious medical condition, as reflected by his statements to intake that he had ingested a lethal amount of fentanyl prior to entering the custody of the Defendants. Doc 34 at 51. Further, Englert possessed direct knowledge that Mr. Fincham had ingested a lethal amount of fentanyl. *Id*. at 220. Mr. Fincham was identified as an individual in need of immediate clinical assessment because he was known to have used opioids recently, regularly, and heavily. In addition, Mr. Fincham reported that he used opioids in the weeks prior to his arrest and had a history of complicated withdrawals. *Id*. at 212. Englert also knew that Mr. Fincham was suffering from opioid withdrawals. *Id*. at 289.

While not a necessary element, Defendant Englert subjectively knew of Plaintiff's serious medical needs as shown by her statements to SBI investigators when she told the SBI that she was aware that the black vomit was indicative of old blood and a sign of a gastrointestinal (GI) bleed. *Id*. at 260. Englert was unable to obtain a blood pressure reading

9

because it was "dangerously low," as she later admitted to SBI investigators. *Id*. at 265. She took Mr. Fincham's manual pulse, which was in the "130s to 140s" range, and observed that he was taking "22 breaths per minute." *Id*. Mr. Fincham simultaneously experienced wrist drop in front of Fetherson and Englert. *Id. at* 266. Englert then attempted to pry Mr. Fincham's hand back to counter the effects of his wrist seizing up. *Id*.

Furthermore, Defendant Englert told SBI Investigators that Mr. Fincham's fingers and toes were curled up. *Id*. at 267. According to Englert, this is a symptom of severe dehydration and electrolyte depletion. *Id*. Englert's attempt to pry back Mr. Fincham's hand evidenced her awareness of the physical manifestations of Mr. Fincham's fentanyl toxicity and opioid withdrawals. *Id*. at 268. When Englert first contacted Mr. Fincham, she immediately noticed that he had filled up a bin with black vomit. *Id.* At 258. However, rather than calling 911 immediately, Englert contacted a sergeant with MCSO, as she had been instructed that a representative of MCSO needed to make the call to EMS. Englert relayed the situation to the sergeant and asked him to call 911 before ending the call. *Id*. at 272. The delay in calling 911 demonstrates that neither MCSO employees, Englert, nor Smith were aware of any set policy or procedure regarding the process for obtaining emergency medical services. *Id.* at 274.

Defendant Englert had the ability to address these risks but failed to act in accordance with the policies and procedures that were made by the Mecklenburg County Detention Center and Wellpath. Englert unnecessarily sought provider approval for emergency services after having concern for Mr. Fincham's condition at approximately 8:10 A.M. *Id*. at 293 (f). Englert delayed obtaining emergency medical services by seeking

10

provider approval in an emergency situation contrary to policies set forth by Wellpath, Mecklenburg County, and Sheriff McFadden. *Id*. at 293 (g). Her failure left Fincham vulnerable to harm that could have been prevented through appropriate supervision and care. These events occurred while Fincham was under medical supervision in jail, where Defendant Englert's responsibilities included ensuring his care.

The facts, as alleged, meet the threshold for plausibility and are sufficient to move forward at this stage of litigation. The Rule 12(b)(6) inquiry is limited to determining whether the allegations constitute "a short and plain statement of the claim showing the pleader is entitled to relief" pursuant to Federal Rule of Civil Procedure 8(a)(2). Here, Plaintiffs' factual allegations in the complaint are sufficient to "raise a right to relief above a speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Therefore, Plaintiffs' claim for violations of 42 U.S.C. §1983 contains "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

## II. PLAINTIFF ADEQUATELY PLED PUNITIVE DAMAGES

Defendant argues that an independent claim for punitive damages cannot exist. Defendant also claims that Plaintiffs are not entitled to punitive damages because such damages are available upon a showing by clear and convincing evidence that other torts were committed with malice. For this proposition, Defendant cites North Carolina case of *Clarke v. Ashraf Gad Bakhom Mikhail, M.D.,* 243 N.C. App. 677 (N.C. Ct. App. 2015). *Clarke* dictates that "plaintiff must also show the presence of aggravating circumstances such as malicious, wanton and reckless injury before plaintiff is entitled to punitive damages." "Recovery of

11

punitive damages requires a claimant to prove by clear and convincing evidence that the defendant is liable for compensatory damages, and the presence of one of the following aggravating factors: (1) fraud; (2) malice; or (3) willful or wanton conduct." *Clarke v. Ashraf Gad Bakhom Mikhail, M.D.*, 243 N.C. App. 677, 689 (N.C. Ct. App. 2015).

Under North Carolina law, Plaintiffs may be entitled to recover punitive damages for Defendant's conduct if a jury determines that conduct was malicious or fraudulent to justify such damages, even if it was not "willful or wanton." Thus, Defendant's bald assertion that Plaintiff has failed to show willful or wanton conduct, even if true, is insufficient to carry Defendant's burden on a motion to dismiss under Federal Rule of Civil Procedure 12.

Plaintiffs have alleged that when Englert first contacted Mr. Fincham, she immediately noticed that he had filled up a bin with black vomit. Doc. 34 at 258. She told the SBI in its follow-up investigation that she knew that the black vomit was indicative of old blood and a sign of a gastrointestinal (GI) bleed. *Id.* at 260. Other residents in Mr. Fincham's pod informed Englert that they had been trying to get Mr. Fincham to drink water throughout the night. *Id.* at 261. Mr. Fincham exhibited an inability to effectively control his body. Particularly, Mr. Fincham experienced wrist drop in front of Englert and Fetherson. *Id.* at 262. At 8:01 A.M., Mr. Fincham lost control of his motor functions, and his breathing became more laborious in front of Englert and Fetherson. *Id.* at 263. Englert later told SBI investigators that Mr. Fincham's fingers and toes were curled up. According to Englert, this is a symptom of severe dehydration and electrolyte depletion. *Id.* at 267. Englert's attempt to pry back Mr. Fincham's hand evidenced her awareness of the physical manifestations of Mr. Fincham's fentanyl toxicity and opioid withdrawals. *Id.* at 268. However, rather than calling 911 immediately,

12

Englert contacted a sergeant with MCSO, as she had been instructed that a representative of MCSO needed to make the call to EMS. Englert relayed the situation to the sergeant and asked him to call 911 before ending the call. *Id.* at 272.

Englert never documented Mr. Fincham's vitals and low blood pressure results obtained at 7:58 A.M. on July 6, 2022, in Mr. Fincham's medical chart. *Id.* at 275. She noticed that Mr. Fincham vomited two gallons of black vomit at 7:55 A.M. *Id.* at 293 (c).

Although naked allegations are insufficient for Plaintiffs to carry the burden of persuasion where Defendant's motion to dismiss claims that Plaintiffs have adduced no evidence of willful or wanton conduct, Plaintiff's allegations are not naked. The standard for a plaintiff's entitlement to punitive damages on federal claims (like Plaintiff's Section 1983 claim) is different from the North Carolina standard. According to the Fourth Circuit in *Cooper*, "[punitive] damages are available ... for conduct that involves reckless or callous indifference to the federally protected rights of others." *Cooper v. Dyke*, 814 F.2d 941, 948 (4th Cir. 1987) (internal quotation mark omitted). Defendant has not addressed Plaintiffs' federal claims, nor did she provide any federal authority regarding punitive damages. As such, she failed to apply *Cooper's* "callous indifference" standard to the facts of Plaintiff's Section 1983 claim.

To recover punitive damages, a plaintiff must establish an underlying cause of action and demonstrate the presence of aggravating circumstances such as malicious, wanton, and reckless conduct of the defendant. *Hawkins v. Hawkins*, 400 S.E.2d 472 at 475 (NC Ct. App. 1991). Based upon the allegations above, a jury could easily find that Defendant Englert acted recklessly. The Plaintiffs have adequately pleaded facts sufficient for an award of punitive damages, which is ultimately decided by a jury.

13

Plaintiffs are entitled to present their punitive damages claim to the jury. Based upon the allegations in Plaintiffs' First Amended Complaint, a jury could easily find that Defendant Englert acted recklessly. Given the lenient pleading standards of Iqbal and Twombly, Plaintiffs asks the Court to deny Defendant's motions to dismiss on punitive damages at this time and hold them under consideration pending further development of the record and summary judgment motions.

### III. PLAINTIFFS' "SEVENTH CAUSE OF ACTION" ASSERTED UNDER NORTH CAROLINA GENERAL STATUTES § 162-55 FOR INJURY TO A PRISONER BY A JAILER IS NOT AGAINST DEFENDANT ENGLERT.

Plaintiffs' "Seventh Cause of Action" asserted under North Carolina General Statutes § 162-55 for injury to a prisoner by a jailer is against Defendants Sheriff McFadden, Fleming, Fetherson, and King. Defendant Englert is not named in this cause of action. In the "Relief Requested" section of their First Amended Complaint, Plaintiffs requested an award of treble the compensatory damages against Defendant McFadden, Mecklenburg County, Defendant Fleming, Defendant Fetherson, Defendant King, Defendant Englert, Defendant Elliott-McLaren, Defendant Smith, R.N., Defendant Warren, and Defendant Wellpath, LLC, under N.C.G.S. § 162-55. This statute provides that "[i]f the keeper of a jail shall do, or cause to be done, any wrong or injury to the prisoners committed to his custody, contrary to law, he shall not only pay treble damages to the person injured but shall be guilty of a Class I misdemeanor." N.C. Gen. Stat. § 162-55. Defendant's motion to dismiss Plaintiffs' "Seventh Cause of Action" asserted under North Carolina General Statutes § 162-55 for injury to a prisoner by a jailer should be denied as it is inapplicable to this defendant.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully asks this Court to deny Defendant's motion to dismiss as to all counts.

Respectfully submitted,

This 22nd day of November 2024.

Respectfully submitted,

/s Micheal L. Littlejohn, Jr.
Micheal L. Littlejohn, Jr.
N.C. Bar No. 49353
Littlejohn Law PLLC
PO Box 16661
Charlotte, N.C. 28297
Telephone: (704) 322-4581
Fax: (704) 625-9396
Email: mll@littlejohn-law.com
*Counsel for Plaintiff Mary Robin*

## CERTIFICATION

I hereby certify, the following: 1) No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal research sources West Law, Lexus, FastCase, and Bloomberg; 2) Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his direction as to the accuracy of the proposition for which it is offered in the citation to authority provided.

*/s/ Micheal L. Littlejohn Jr.*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH
CAROLINA CHARLOTTE DIVISION

Case No. 3:24-cv-000636

MARY ROBIN AND RUSSELL
FINCHAM III, as Administrators
of the Estate of FINCHAM Deceased,

      Plaintiff,

v.

GARRY MCFADDEN, et. al.

      Defendant.

_____/

## CERTIFICATE OF SERVICE

The undersigned certifies that on Friday, November 22, 2024, the foregoing Plaintiff's Response in Opposition to the Motion to Dismiss Filed by Defendant Casey Jane Englert, R.N.'S was electronically filed with the Clerk of the Court, using the Court's CM/ECF electronic service system, which will automatically send electronic mail notification of such filing to all attorneys of record, who are each CM/ECF participants.

                                             */s Micheal L. Littlejohn, Jr.*
                                             Micheal L. Littlejohn, Jr.
                                             LITTLEJOHN LAW, PLLC

17

Case 3:24-cv-00636-FDW-SCR    Document 73    Filed 11/22/24    Page 17 of 17